UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

TOWER PRODUCTS INC., *et al.*,

       Plaintiffs,

  -against-          1:19-CV-1038 (LEK/CFH)

LAIRD ENTERPRISES INC., f/k/a/
LAIRD TELEMEDIA INC.,

       Defendant.

_____

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I. INTRODUCTION**

  Tower Products Inc. and Mark Braunstein (collectively, "Plaintiffs") filed this diversity action against Laird Enterprises Inc., formerly known as Laird Telemedia Inc. Dkt. No. 1 ("Complaint"). Plaintiffs have been accused of fraudulently inducing Defendant into signing an amendment to the parties' Trademark Purchase and Sale Agreement ("TPSA"). <u>Id.</u> Plaintiffs seek a declaratory judgment that the amendment to the TPSA ("Amended TPSA") is valid and was not procured by fraud. <u>Id.</u> Now before the Court is Plaintiffs' motion for default judgment. Dkt. No. 11-1 ("Default Motion").

  For the reasons that follow, the Court denies the Default Motion and declines to exercise jurisdiction over this action.

**II. BACKGROUND**

  In December 1999, the parties entered into the TPSA to sell, transfer, and assign to Plaintiffs all rights, title, and interest in Defendant's trademarks. Compl. ¶ 14. Pursuant to the TPSA, Plaintiffs agreed to pay semi-annual royalty fees to Defendant. <u>Id.</u> ¶ 15.

In February 2010, the parties signed the Amended TPSA, which omitted the royalty payment clause and instead stated that Plaintiffs would pay Defendant $5,000 as a final payment with respect to all past and future royalties. Id. ¶¶ 22–23.

Nine years later, Defendant sent a letter to Plaintiffs, alleging that Plaintiffs had fraudulently induced Defendant to sign the Amended TPSA. Id. ¶ 32. Defendant requested $250,000 from Plaintiffs to settle the alleged fraud claim and stated that it would file suit against Plaintiffs in Utah state court if Plaintiffs did not respond by August 16, 2019. Id. ¶ 41; Dkt. No. 1-3 ("Laird Letter"). Plaintiffs responded to Defendant on August 23, 2019 in a letter stating that Defendant's claim was meritless, and that Plaintiffs had filed a complaint in this Court seeking a declaratory judgment. Dkt. No. 11-4 ("Tower Response Letter").

On August 21, 2019, Plaintiffs filed their Complaint, seeking: (1) "[a]n order of this Court declaring that Plaintiffs have not procured the Amended TPSA by fraud . . . ; (2) "[a]n order of this Court declaring the Amended TPSA valid and enforceable"; and (3) [such] other and further equitable relief against Defendant in favor of [Plaintiffs] as this Court deems just, equitable and proper." Id. at 10. Defendant did not respond, and, on November 22, 2019, the Clerk entered a default against Defendant. Dkt. No. 9 ("Entry of Default"). Plaintiffs then filed their Default Motion on December 23, 2019. Default Mot. In the Default Motion, Plaintiffs request: (1) "[a] declaratory judgment that the Amended [TPSA] . . . is valid, not procured by fraud, and all obligations by [Plaintiff] pursuant to the agreement have been fulfilled"; (2) "[a] declaratory judgment that [Defendant] . . . has no valid fraud claim against [Plaintiffs]"; and (3) "[a] permanent injunction upon [Defendant] preventing [Defendant] from filing a lawsuit for fraud and/or trademark infringement against [Plaintiffs]." Default Mot. at 12. Defendant has not responded. Docket.

### III.    LEGAL STANDARD

"Federal rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." Elec. Creations Corp. v. Gigahertz, Inc., No. 12-CV-1423, 2013 WL 3229125, at *3 (N.D.N.Y. June 25, 2013) (quoting Robertson v. Doe, No. 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008)). "First, under Rule 55(a), when a party fails to plead or otherwise defend . . . the clerk must enter the party's default." Id. Second, under Federal Rule of Civil Procedure 55(b)(2), "the party seeking default judgment is required to present its application for entry of judgment to the court." Id.

Under Local Rule 55.2(b), the moving party must submit with its motion for default judgment: (1) a clerk's certificate of entry of default; (2) a proposed form of default judgment; (3) a copy of the pleading to which no response has been made; and (4) an affidavit. L.R. 55.2(b). The affidavit must set forth that: (1) the party against whom judgment is sought is not an infant, incompetent, or in military service; (2) the party against whom judgment is sought has defaulted in appearance in the action; (3) service was properly effected under Federal Rule of Civil Procedure 4; (4) the amount sought is justly due and owing, and no part has been paid; and (5) the disbursements sought to be taxed have been made in the action or will necessarily be made or incurred. L.R. 55.2(a).

In evaluating a motion for default judgment, all of the well-pleaded allegations in a complaint pertaining to liability are deemed true. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). However, "[b]efore judgment can be entered, the court must determine whether plaintiff's factual allegations are sufficient to state a claim for which the plaintiff seeks judgment by default." Van Limburg Stirum et al. v. Whalen, No. 90-CV-1279, 1993 WL 241464, at *4 (N.D.N.Y. June 29, 1993). Default judgment is an

extreme sanction, and decisions on the merits are favored. Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).

IV.     **DISCUSSION**

    **A.  Declaratory Judgment**

Plaintiffs seek a declaratory judgment that: (1) "the Amended [TPSA] . . . is valid, not procured by fraud, and all obligations by [Plaintiff] pursuant to the agreement have been fulfilled"; and (2) "that [Defendant] . . . has no valid fraud claim against [Plaintiffs]." Default Mot. at 12. The Court finds that Plaintiffs are not entitled to a declaratory judgment.

Under the Declaratory Judgment Act (the "DJA"), a court "may declare the rights and other legal relations of any interested party seeking such declaration" when there is an "actual case or controversy" within the court's jurisdiction. 28 U.S.C. § 2201(a). Determining whether an actual case or controversy exists is a fact-intensive inquiry. Adirondack Cookie Co. v. Monaco Baking Co., 871 F. Supp. 2d 86, 91 (N.D.N.Y. 2012). The alleged facts, under all the circumstances, must show a "substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (quoting Golden v. Zwickler, 349 U.S. 103, 108 (1969)). If a case or controversy exists, "[a] court's exercise of jurisdiction under the DJA is discretionary." Springer v. U.S. Bank Nat'l Ass'n, No. 15-CV-1107, 2015 WL 9462083, at *6 (S.D.N.Y. Dec. 23, 2015); see also Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1986) (explaining that the DJA "confers a discretion on the courts rather than an absolute right upon the litigant"). Courts have the discretion to exercise jurisdiction over declaratory actions based on "equitable, prudential, and policy arguments." MedImmune, Inc. v. Genetech, Inc., 548 U.S. 118, 136 (2007).

Thus, the Court addresses: (1) whether subject matter jurisdiction exists because Plaintiffs' suit presents an actual case or controversy; and (2) if so, whether equitable, prudential, or policy grounds exist for the Court to exercise jurisdiction over Plaintiffs' suit. See Springer, 2015 WL 9462083, at * 7.

### 1. Whether Subject Matter Jurisdiction Exists

In the present case, Plaintiffs have established an actual case or controversy. Defendant has accused Plaintiffs of fraudulently inducing Defendant to sign the Amended TPSA. Compl. ¶ 31. Defendant demanded $250,000 from Plaintiffs to settle the issue and threatened to sue for fraud if Plaintiffs did not pay. Id. ¶ 41. Defendant has not retracted this fraud allegation. Default Mot. at 8. These allegations, accepted as true, indicate that there is a controversy between the parties. See Muller v. Olin Mathieson Chem. Corp., 404 F.2d 501, 504 (2d Cir. 1968) (holding that an actual controversy exists in a dispute if the defendant has threatened the plaintiff directly or indirectly with litigation); Classic Liquor Imps., Ltd v. Spirits Int'l B.V., 151 F. Supp. 3d 451, 457 (S.D.N.Y. 2015) (holding that a letter indicating a threat of future litigation created an actual controversy). Hence, the Court may exercise jurisdiction over the declaratory action.

### 2. Whether to Exercise Jurisdiction

The Court, however, declines to exercise jurisdiction over this declaratory action, for three reasons.

First, Plaintiffs improperly ask the Court for a declaration solely with regard to conduct that occurred in the past, rather than a declaration regarding conduct that may occur in the future. "Where the purported use of the DJA seeks a declaration of non-liability to preemptively defeat actions grounded on tort claims involving rights already accrued by reason of alleged wrongful conduct, various courts have held that [such] an application is not a warranted purpose of the

DJA." <u>Dow Jones & Co., Inc. v. Harrods, Ltd.</u>, 237 F. Supp. 2d 294, 426 (S.D.N.Y. 2002). "The reason for this rule is clear: declaratory relief is intended to operate prospectively . . . . There is no basis for declaratory relief where only past acts are involved." <u>Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.</u>, No. 02-CV-10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003).

In the present case, Plaintiffs seek a declaration that the Amended TPSA was not procured by fraud and is thus valid. Default Mot. at 12. The alleged fraud surrounding the parties' agreement to the Amended TPSA purportedly transpired over ten years ago. Compl. ¶ 32. Plaintiffs are not seeking a "prospective determination of their rights and responsibilities," but instead a determination that they are not liable for damages alleged to have already accrued. <u>Nat'l Union</u>, 2003 WL 21277114, at *5. This is not an appropriate use of the DJA. <u>See</u> <u>Parker v. Citizen's Bank, N.A.</u>, No. 19-CV-1454, 2019 WL 5569680, at * 4 (S.D.N.Y. Oct. 29, 2019) (declining to grant declaratory judgment when the moving party was not seeking prospective relief, but instead a declaration that its rights were infringed eight years prior); <u>John Wiley & Sons, Inc., v. Visuals Unlimited, Inc.</u>, No. 11-CV-5453, 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) (holding that a requested declaration of non-liability for fraud that allegedly occurred in the past was an improper use of the DJA). This action also seeks a determination that Plaintiffs have fulfilled their obligations pursuant to the TPSA and Amended TPSA. Default Mot. at 12. In this request, too, Plaintiffs are not seeking a prospective determination of their rights, but a determination that in the past they performed their contractual obligations.[1] This is

---

[1]  Plaintiffs have not argued that the relief they are seeking is prospective and is a proper use of the DJA. Default Mot. Instead, Plaintiffs argue they are entitled to a declaratory judgment because: (1) there is an actual case or controversy; (2) Defendant's fraud claim is meritless; and (3) the fraud claim is barred by the statute of limitations. Default Mot. at 7–9. However, because the Court declines to exercise jurisdiction over Plaintiffs' case, the Court does not reach the merits of the latter two arguments.

also not an appropriate use of the DJA.[2] See Nat'l Union, 2003 WL 21277114, at * 5 (declining to exercise jurisdiction where the plaintiff requested a declaration that it had previously performed its obligations under a contract).

Second, Plaintiffs improperly ask the Court for a declaration based on defenses they anticipate using in a future civil suit. "The anticipation of defenses is not ordinarily a proper use of the [DJA]," as "[it] deprives the plaintiff of his traditional forum and timing, and provokes a disorderly race to the courthouse." Adirondack, 871 F. Supp. 2d at 94 (quoting Hanes Corp v. Millard, 531 F.2d 585, 592–93 (D.C. Cir. 1976)). Accordingly, "numerous courts have refused to grant declaratory relief to a party who has come to court only to assert an anticipatory defense." Veoh Networks, Inc. v. UMG Recordings, Inc., 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007) (citing cases).

Here, Plaintiffs seek a declaration that Defendant has no valid fraud claim. Default Mot. at 12. More specifically, Plaintiffs seek a declaratory judgment that the fraud claim is without merit, and is barred by the statute of limitations. Compl. ¶¶ 48–49, 52–56. These claims are defenses that Plaintiffs would raise in a suit brought by Defendant. See Wiley, 2011 WL 5245192, at *7 (quoting Black's Law Dictionary (9th ed. 2009) ("A defense is a reason why the plaintiff should not recover or establish that which he seeks by his complaint.")). Therefore, for this reason as well, the Court declines to exercise jurisdiction over Plaintiffs' request for a

---

[2] The Court notes that "anticipatory judgments of non-liability are [] appropriate where there are claims asserting unaccrued or undefined rights or obligations arising under contractual relations such as insurance and intellectual property." Dow Jones, 237 F. Supp. 2d at 426. If Plaintiffs were seeking a declaratory judgment that they have the current and future right to use Defendant's trademarks, a declaratory judgment might be appropriate. See Starter Corp. v. Converse, Inc., 84 F.3d 592 (2d Cir. 1996) (finding declaratory judgment appropriate to determine the right to use a trademark). However, because they only seek relief related to Defendant's tort claims, the Court declines to exercise jurisdiction.

declaratory judgment. <u>See id.</u> (declining to exercise jurisdiction over a declaratory action that anticipated defenses, such as one based on the statute of limitations); <u>Adirondack</u>, 871 F. Supp. 2d at 94–95 (declining to grant a declaratory judgment regarding a defense the plaintiff would assert in a future lawsuit).

Third, Plaintiffs' request for a declaratory judgment appears to be motivated by forum shopping. A court may decline to exercise jurisdiction over a declaratory judgment action if the suit is motivated by forum shopping. <u>See</u> <u>Dow Jones</u>, 237 F. Supp. 2d at 440 (stating that forum shopping "is one of the equitable considerations a court may weigh in ruling on a request for declaratory relief"). "Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff." <u>See</u> <u>Dish Network, L.L.C. v. Am. Broad. Co. , Inc.</u>, No. 12-CV-4155, 2012 WL 2719161, at *3 (S.D.N.Y. July 9, 2012) (quoting <u>Nat'l Union</u>, 2003 WL 21277114, at *6).

In the present case, the evidence suggests that Plaintiffs filed their Complaint in an attempt to preempt Defendant's choice of forum. Plaintiffs filed the Complaint on August 21, 2019 in direct response to Defendant's letter stating its intention to sue in Utah state court if Plaintiffs did not respond to the letter. <u>See</u> Tower Response Letter; <u>see also</u> <u>Federal Ins. Co. v. May Dep't Stores Co.</u>, 808 F. Supp. 347, 350 (S.D.N.Y. 1992) (stating that forum shopping can be inferred if an anticipatory declaratory judgment action was filed after notice of a coercive suit has been received). Plaintiffs additionally stated in their briefing that, if they are not awarded default judgment, they will be "vulnerable against a frivolous lawsuit by [Defendant] in a forum of [Defendant's] choosing." Default Mot. at 11. This statement suggests that Plaintiffs filed their Complaint in this Court to prevent Defendant from accessing a different forum. Such a suit is not

a proper use of the DJA. See Dish Network, 2012 WL 2719161, at *4, *6 (declining to exercise jurisdiction over a declaratory judgment action motivated by forum shopping).

For the foregoing reasons, the Court declines to exercise jurisdiction over this action.

### B.  Permanent Injunction

Plaintiffs also seek a permanent injunction to prevent Defendant from filing a lawsuit for fraud and/or trademark infringement against Plaintiffs. Default Mot. at 12. "A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." Heartland Trademarks, Ltd. v. Dr Flax LLC, No. 17-CV-795, 2018 WL 1989540, at *4 (N.D.N.Y. Apr. 24, 2018). In their Default Motion, Plaintiffs have made no effort to demonstrate that they are entitled to a permanent injunction, see Default Mot., merely appending this request to the end of their brief without citation or argument, see id. at 12. Consequently, the Court denies Plaintiffs' request for a permanent injunction. See Alpha Capital Anstalt v. Shiftpixy, Inc., 432 F. Supp. 3d 326, 332 (S.D.N.Y. 2020) (denying a permanent injunction request when the plaintiff failed to establish that its request satisfied the elements); Broad. Music, Inc. v. Pamdh Enterprises, Inc., No. 13-CV-2255, 2014 WL 2781846, at *1 (S.D.N.Y. June 19, 2014) (denying a request for a permanent injunction because the plaintiffs' allegations did not meet the prerequisites).

### V.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Court **DECLINES** to exercise jurisdiction over Plaintiffs' suit for declaratory relief. Plaintiffs' Default Motion (Dkt. No. 11) is therefore **DENIED**; and it is further

**ORDERED**, the Complaint (Dkt. No. 1) is **DISMISSED without prejudice** for lack of jurisdiction; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the local rules.

**IT IS SO ORDERED.**

DATED:      June 24, 2020
                Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge